# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| ELDRIDGE IVY, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL BECKHAM, ARCELORMITTAL INDIANA HARBOR LLC, and GRANGE INDEMNITY INSURANCE COMPANY, <br><br> Defendants. | CAUSE NO.: 2:16-CV-169-TLS |

## OPINION AND ORDER

This matter is before the Court on Defendants' Michael Beckham and ArcelorMittal Indiana Harbor, LLC's Motion for Summary Judgment [ECF No. 63]. Plaintiff Eldridge Ivy brings this lawsuit under a negligence theory for injuries he allegedly sustained on May 27, 2015, when his parked Mack Truck was backed into at a low speed by Defendant Michael Beckham, an employee of Defendant ArcelorMittal Indiana Harbor LLC. Plaintiff alleges that he suffered permanent injuries as a result of the negligence. In the instant motion, Defendants argue that Plaintiff has failed to meet his burden of producing expert testimony sufficient to establish proximate causation, an essential element of his claim. Because Defendants have not addressed whether Plaintiff's treating chiropractor's opinion is admissible on the issue of causation under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Court DENIES Defendants' motion.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The Supreme Court has explained that "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). Within this context, the Court must construe all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017).

## FACTUAL BACKGROUND[1]

### A. Medical Treatment and Chronic Back Pain Prior to the Incident

At the time of the May 27, 2015 incident, Plaintiff was 62 years old. Defs.' Mot., Ex. 1, Ivy Dep. 6:1–2, ECF No. 64-1. He had longstanding, chronic back and neck pain due to a degenerative process in his spine. Defs.' Mot., Ex. 2, Innola Dep. 29:6–30:5, 32:2–13, ECF No. 64-2. He had also been involved in prior automobile accidents and falls, which caused him to experience back pain and seek medical treatment. Ivy Dep. 18:20–19:15; 24:9–25:4; 28:8–29:1. This included a "bad" fall sometime between 1997 and 2002. *Id.* 18:3–7, 19:10–11. Plaintiff experienced back pain, which he was told was due to deterioration of the discs in his lumbar spine. *Id.* 19:19–25. In February 2010, he was treated for back pain after his truck tipped over in a gust of wind. *Id.* 26:10–27:5; 28:2–29:1.

In January 2015, just four months before the May 27, 2015 incident, Plaintiff visited Dr. Innola, his primary care physician. Innola Dep. 8:3–6, 25:22–26:1. Plaintiff complained of back

---

[1] Parts A–D of this Factual Background are taken from Defendants' Statement of Undisputed Facts, as supported by the evidence of record, because Plaintiff did not submit a "Statement of Genuine Disputes" as required by Northern District of Indiana Local Rule 56-1(b)(2).

pain, which he rated as a 7 on a scale of 1 to 10, with 10 being the most pain. *Id.* 25:17–27:17; Ivy Dep. 29:10–23. This back pain was limiting his ability to walk and affecting his activities. Innola Dep. 28:5–29:4, 32:1–4; Ivy Dep. 30:4–12. Dr. Innola prescribed Tramadol (an opioid pain medication) and acetaminophen to help relieve Plaintiff's pain. Innola Dep. 30:17–31:5. Dr. Innola also ordered a lumbar spine x-ray and an MRI to evaluate Plaintiff's spine based on a concern that he would require a surgical consultation for his back pain. *Id.* 30:14–16, 32:14–33:14. Following the x-ray results, Dr. Innola prescribed anti-inflammatory medication. *Id.* 32:17–24. The MRI of Plaintiff's lumbar spine, completed in March 2015, revealed significant degenerative findings, which Dr. Innola explained means "wear and tear changes . . . in the joints." *Id.* 33:17–34:4; p. 40:3–8. The degenerative changes were affecting the discs at the L4 and L5 levels of Plaintiff's spine. Ivy Dep. 30:11–31:7. After reviewing the MRI findings in March 2015, Dr. Innola prescribed physical therapy to address Plaintiff's back pain. Innola Dep. 16:7–11; 34:17–21. Thereafter, Plaintiff did not follow up with Dr. Innola for over a year. *Id.* 17:23–18:2, 34:22–35:4.

**B.     The May 27, 2015 Incident**

On May 27, 2015, Plaintiff, a truck driver, was taking a load of sinter from ArcelorMittal's Plant 2 to the ore dock yard on another side of the premises. Ivy Dep. 13:8–25, 14:22–24, 38:8–15, 117:21–24. There, a pay loader operator would scoop the sinter into a device called a sifter. *Id.* 14:19–15:1, 41:14–20. Shortly before the incident, Plaintiff drove his truck up a road to the left side of the ore docks yard, where he intended to dump his load of sinter. *Id.* 50:7–13, 100:23–102:5.[2] The area where Plaintiff parked his truck was cordoned off by orange cones and large cement blocks. Defs.' Br., Ex. 3, 25:13–26:14 (Beckham Dep.), ECF No. 64-3.

---

[2] Plaintiff testified that he and other truck drivers regularly used the left road but that the road became unauthorized after the May 27, 2015 incident. Ivy Dep. 50:7–22.

Defendant Michael Beckham testified that, in order to access the area where Plaintiff was parked at the time of the incident, Plaintiff would have had to drive around or through the cement blocks. *Id*. 33:8–17; 58:6–10. Mr. Beckham described this as a "shortcut." *Id.* 57:7–58:10.

Around the same time, Mr. Beckham was operating his front-end loader, moving piles of sinter from the surrounding area into the sifter by repeatedly backing up and pulling forward within a certain work area. Beckham Dep. 16:9–12, 16:25–17:2, 17:10–21. The front-end loader moves slowly and articulates on a swivel such that it can backs at an angle. *Id.* 62:1–7; Ivy Dep. 104:2–5. Having observed Mr. Beckham operating his front-end loader, Plaintiff parked his truck behind the area where Mr. Beckham was operating his payloader. Ivy Dep. 102:16–23, 102:24–103:22. In the process of slowly backing up to get another load, Mr. Beckham felt a wobble, put his front-end loader in park, and saw that Plaintiff's vehicle was sitting against his bumper. Beckham Dep. 18:12–15, 19:16–22, 23:12–24:18. The impact between Mr. Beckham's front-end loader and Plaintiff's Mac Truck did not move Plaintiff's truck but pushed the fender and grille of Plaintiff's truck in slightly. Ivy Dep. 68:21–69:2, 69:3–5. Plaintiff felt the cab of the vehicle move or rock on its suspension. *Id.* 69:6–9.

Plaintiff did not have any back pain immediately after the incident and declined medical attention. *Id.* 71:11–72:6. After the collision, Plaintiff jumped down from the step of the cab of his truck to speak with Mr. Beckham. Beckham Dep. 55:5–12. Plaintiff walked towards Mr. Beckham without any limp and did not otherwise appear to be injured. *Id.* 55:13–24. Mr. Beckham twice asked Plaintiff if he was injured, and Plaintiff did not indicate that he was injured. *Id.* 56:3–13. Plaintiff did not request medical assistance at the scene of the incident. *Id.* 56:15–19.

## C. Medical Treatment After the Incident

Plaintiff "was okay for the first day and a half after the accident" and did not seek any medical treatment until two full days later. Ivy Dep. 36:25–37:4, 109:2–22. No physician told Plaintiff he was unable to work, and Plaintiff did not return to see Dr. Innola again until May 4, 2016, approximately one year after the incident. *Id.* 110:12–21; Innola Dep. 9:17–23. When Plaintiff returned to see Dr. Innola in May 2016, he complained of bilateral, non-radiating, lower back pain that occurred when he was sitting for long periods. Innola Dep. 12:1–13. Dr. Innola prescribed Tylenol. *Id.* 14:17–18. Plaintiff saw Dr. Innola again on July 7, 2016, reporting that his lower back had not bothered him recently but that he had worsening pain in both of his hips and in his middle back. *Id.* 14:19–22, 15:3–14. Thereafter, Dr. Innola ordered a thoracolumbar spine x-rays and hip x-rays, which were completed on July 22, 2016. *Id.* 19:4–15. Plaintiff sought a course of chiropractic treatment after the incident but has not received any treatment for his back pain since November 2016. Ivy Dep. 80:1–12, 99:16–22. His pain has improved, and he returned to working as a truck driver as soon as his vehicle was repaired. *Id.* 37:18–38:7, 77:11–22.

## D. Dr. Innola's Opinions

According to Dr. Innola, Plaintiff's symptoms on May 4, 2016, were substantially similar to those he complained of when she evaluated him in January 2015. Innola Dep. 29:6–20. Dr. Innola testified that Plaintiff's complaints in July 2016 were improved when compared to his pre-incident complaints. *Id.* 38:13–16. Dr. Innola explained that Plaintiff's reported pain that had "come and gone" over the course of three years substantiated her belief that Plaintiff had a chronic, long-standing back problem. *Id.* 29:22–30:5. Dr. Innola testified that this opinion about Plaintiff's chronic back issues is corroborated by the various imaging studies taken of Plaintiff's

spine. *Id.* 30:6–8. Dr. Innola testified that x-rays taken shortly after the incident did not show any evidence of trauma, fracture, or an acute injury. *Id.* 57:4–22; 63:16–19. The x-rays showed only degenerative changes at the L5–S1 level. *Id.* 57:4–18. Further, there was no difference in the appearance of Plaintiff's spine on x-rays taken before the incident, in January 2015, as compared with those taken on July 22, 2016, after the incident. *Id.* 35:21–37:11. Dr. Innola testified that, after comparing the January 2015 and July 2016 x-rays, the interpreting radiologist reported "no interval change," meaning the radiologist thought that the x-rays looked similar. *Id.*

Dr. Innola testified that she cannot evaluate whether the May 27, 2015 incident caused Plaintiff to have any increased or worsening back pain because she did not see him around the time of the incident. *Id.* 18:3–13. She does not have enough information about the facts of the incident or Plaintiff's treatment after the incident to testify as to whether Plaintiff's pain complaints could have been caused by the incident. *Id.* 22:13–17; 23:6–13.

**E.     Treating Chiropractor Dr. Jason Lee-Smith**

Plaintiff sought chiropractic treatment from chiropractor Dr. Jason Lee-Smith in June 2015. Pl.'s Designation of Evid., Ex. 1, 5:16–21, 6:8–10 (Lee-Smith Dep.), ECF No. 66-1. Plaintiff reported pain from his head to his feet with neck pain, low back pain, hip pain, bilateral shoulder pain, right arm and left arm pain, ankle pain, knee pain, sciatica, and leg pain. *Id*. 6:24–7:17. Plaintiff reported that the problems had begun two weeks earlier following the May 27, 2015 incident. *Id.* 7:12–17. Dr. Lee-Smith diagnosed "cervicothoracic, lumbosacral sprain-strain with associated myalgia and neuralgia, wrist and knee sprains." *Id*. 7:24–8:2. Dr. Lee-Smith testified that the diagnoses "correlated" with the May 27, 2015 incident. *Id*. 8:3–8. Dr. Lee-Smith further testified as to the effect an injury such as a motor vehicle accident could have on someone of Plaintiff's age and osteoarthritic state. *Id*. 15:16–16:17. He testified that, "when a

6

traumatic event occurs and these things are in someone's body, they do take them to a much more acute state, and then, also, reinjure already underlying insured tissue before of that." *Id*. 16:4–8.

## ANALYSIS

Defendants seek summary judgment on Plaintiff's personal injury claim, arguing that the undisputed evidence does not support Plaintiff's claim that he sustained a back injury or the worsening of a back injury as a result of the May 27, 2015 incident. Specifically, Defendants argue that, because this case involves a complex question of medical causation in light of Plaintiff's pre-existing back problems, Indiana law requires Plaintiff to offer expert medical testimony on proximate cause. Defendants contend that Plaintiff has failed to do so because his treating physician, Dr. Innola, did not offer an opinion on causation and because his treating chiropractor, Dr. Lee-Smith, is not a qualified physician that can offer an expert opinion on medical causation under Indiana law. Although state law governs whether expert medical testimony is required on causation in this diversity case, federal law governs whether the treating chiropractor's opinion is admissible as an expert medical opinion on the issue of causation. Because Defendants did not address the applicable federal standard as to Dr. Lee-Smith's opinion, they have not met their burden and summary judgment is not proper on the instant motion.

Under the doctrine of *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), federal courts sitting in diversity are bound by state substantive law but apply their own procedural rules. *Wallace v. McGlotham*, 606 F.3d 410, 419 (7th Cir. 2010) (citing *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 754 (7th Cir. 2004)). Thus, in *Wallace*, the Seventh Circuit Court of Appeals, sitting in diversity and considering a Rule 50(b) motion for judgment as a matter of law, applied Indiana

substantive law to the plaintiffs' medical malpractice claim, including the requirement that the plaintiffs must offer expert testimony on causation. *Id*. at 418–20. This Court likewise applies Indiana law on those substantive issues.

To prevail on a claim of negligence under Indiana law, a plaintiff must prove (1) a duty owed to the plaintiff by the defendant, (2) a breach of that duty by the defendant, and (3) an injury to the plaintiff proximately caused by that breach. *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007).

> An essential element in a cause of action for negligence is the requirement of a reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered. This element requires, at a minimum, causation in fact— that is, that the harm would not have occurred "but for" the defendants' conduct. The "but for" analysis presupposed that, absent the tortious conduct, a plaintiff would have been spared suffering the claimed harm.

*Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994) (internal citation omitted). Moreover, "[t]he question of the causal connection between a permanent condition, an injury and a pre-existing affliction or condition is a complicated medical question." *Id*. 877–78. Indiana law provides that, "[w]hen the issue of cause is not within the understanding of a lay person, testimony of an expert witness on the issue is necessary." *Id*. at 878; *see also Wallace*, 606 F.3d at 420 (quoting *Topp v. Leffers*, 838 N.E.2d 1027, 1032 (Ind. Ct. App. 2005) (quoting *Daub*, 629 N.E.2d at 877–78)).

The question of causation in this case is a complicated medical question requiring an expert witness opinion under *Daub*. In light of Plaintiff's pre-existing spinal problems, his history of being injured in other accidents, the low-speed impact that occurred during the incident underlying this case, that Plaintiff's back pain was substantially the same before and after the incident, and the lack of objective evidence of a worsening spinal condition after the incident, the issue of medical causation in this case is not within the understanding of a lay

person. *See Topp*, 838 N.E.2d at 1033 (finding that the plaintiff's pre-existing injuries, along with the subjective nature of the plaintiff's injuries rendered the causal connection between the accident and the resulting injuries a "complicated medical question that is not within the understanding of a lay person").

Plaintiff had a history of at least two prior accidents that resulted in treatment for back pain. Following a bad fall in the last 1990s or early 2000s, Plaintiff was diagnosed with a degenerative disc problem in his lumbar spine. From January to March 2015, two months prior to the May 27, 2015 incident, Plaintiff was evaluated for severe back pain that was affecting his ability to walk and was limiting his activities. At that time, Plaintiff reported to Dr. Innola that he had been experiencing back pain on and off for three years prior. Dr. Innola ordered multiple diagnostic imaging studies, prescribed opioid pain medication and anti-inflammatory medication, and referred Plaintiff to physical therapy. In March 2015, two months before the incident in this case, Plaintiff was diagnosed with significant degenerative disc disease in his lumbar spine.

In addition, the objective medical evidence alone does not appear to support a finding that the May 27, 2015 collision exacerbated Plaintiff's pre-existing condition. *See Topp*, 838 N.E.2d at 1033. The x-rays taken three days after the incident showed no fracture or other evidence of an acute injury. Also, Plaintiff did not complain of pain immediately following the accident, did not appear injured to an accident witness, and did not seek medical treatment until two days later. When there is no objective evidence of injury and the plaintiff's complaints are subjective in nature, medical testimony from a qualified expert witness becomes even more important. *Id.* at 1036 (finding that corroborating expert medical opinion testimony was required where the plaintiff's complaints were subjective, the plaintiff did not complain of back pain immediately after the accident, the plaintiff refused to be taken to the hospital after the accident,

9

and no witness testified that the plaintiff complained of pain after the accident); *Daub*, 629 N.E.2d at 877–78 (requiring medical expert testimony on injury causation despite the plaintiff's complaints of pain on the day after the accident, a course of chiropractic treatment, subsequent hospitalizations, and two surgeries).

Thus, this is not a case in which causation is within the understanding of a lay person or may be proven by circumstantial evidence. *See Smith v. Beaty*, 639 N.E.2d 1029, 1034 (Ind. Ct. App. 1994) (explaining that "[c]ausation may be proven by circumstantial evidence if the evidence has sufficient probative force to constitute a basis for a legal inference rather than mere speculation" and that expert testimony is not required "[w]hen the issue of causation is within the understanding of the lay person"); *see also Wallace*, 606 F.3d at 420 (explaining that "expert testimony is not required in every personal injury case, even when proximate cause is at issue" (citing *Beaty*, 639 N.E.2d at 1034)); *Topp*, 838 N.E.2d at 1034–36 (distinguishing *Beaty* on the basis that the plaintiff in *Beaty* suffered an objective injury of broken ribs whereas the plaintiff in *Topp* complained of a subjective injury based on pain).

Because expert testimony is required on the issue of causation in this case, the Court turns to the question of whether Plaintiff has offered the requisite expert testimony to raise a genuine dispute of material fact for trial. Notably, Plaintiff has not disclosed a retained medical expert on causation. Rather, he provided Rule 26 disclosures only for his primary care physician, Dr. Innola, and his treating chiropractor, Dr. Lee-Smith. The Court considers each in turn.

Dr. Innola did not offer an opinion on causation. Dr. Innola testified that Plaintiff's pain complaints and the imaging studies were substantially the same before and after the incident. Dr. Innola did not opine that there was an exacerbation of Plaintiff's back pain or worsening of his spinal pathology due to the incident, explaining that she did not have enough information about

the mechanics of the incident or Plaintiff's medical treatment afterward to offer an opinion on causation.

This leave only Plaintiff's treating chiropractor, Dr. Lee-Smith, as a possible source of expert testimony on the issue of causation. Defendants argue that any opinion of Dr. Lee-Smith on medical causation is not competent evidence under Indiana law because he is a chiropractor and not a physician. In support, Defendants cite Indiana state court cases holding that the opinion of non-physician medical providers, including chiropractors, is not admissible on a complex issue of medical causation. *See Totton v. Bukofchan*, 80 N.E.3d 891, 894 (Ind. Ct. App. 2017) (citing *Nasser v. St. Vincent Hosp. and Health Servs.*, 926 N.E.2d 43 (Ind. Ct. App. 2010); *Long v. Methodist Hosp. of Ind., Inc.*, 699 N.E.2d 1164 (Ind. Ct. App. 1998); *Stryczek v. The Methodist Hosps.*, 694 N.E.2d 1186 (Ind. Ct. App. 1998)).

However, the standards for admitting expert evidence or evaluating the sufficiency of that evidence falls on the procedural side of the *Erie* divide. *See Wallace*, 606 F.3d at 419 (citing *Stutzman v. CRST, Inc.*, 997 F.2d 291, 295 (7th Cir. 1993) (holding that the admissibility of expert testimony in federal diversity cases is a procedural matter governed by federal law)). Thus, Federal Rule of Evidence 702 and the principles set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), control the admission of expert testimony. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015) (citing *Wallace*, 606 F.3d at 419); *see also Sheng v. Bissonnette*, No. 1:17-CV-3864, 2019 WL 2329362, at *2 (S.D. Ind. May 31, 2019) (applying federal law in a diversity case on the issue of whether a chiropractor may testify on the issue of medical causation and finding, on a motion in limine prior to hearing the chiropractor's testimony, that the court was unable to conduct the Rule 702 analysis at that stage of the proceedings).

Defendants in this case did not address Federal Rule of Evidence 702 or *Daubert* in their opening brief. Defendants did not argue generally that, under the federal standard, chiropractors are not qualified to give expert testimony on causation in a complex medical case. Nor did Defendants argue in their opening brief that Dr. Lee-Smith specifically was unqualified under Federal Rule of Evidence 702 and *Daubert*. The Court recognizes that Defendants argue for the first time in their reply brief that Dr. Lee-Smith's opinion is not admissible under Federal Rule of Evidence 702 and *Daubert* on the basis that Dr. Lee-Smith did not employ a reliable method. However, the Court declines to consider that argument on the instant motion. Because Defendants first raised the argument in their reply brief, Plaintiff did not have an opportunity to respond and the legal issue is not fully developed.

Accordingly, on the briefing before the Court, Defendants have not shown that Plaintiff cannot establish the element of causation. As Defendants only moved for summary judgment on the issue of causation, summary judgment in favor of Defendants is not appropriate at this time. Defendants are granted leave to file a *Daubert* motion in advance of trial.

## CONCLUSION

Based on the foregoing, the Court DENIES Defendants' Michael Beckham and ArcelorMittal Indiana Harbor, LLC's Motion for Summary Judgment [ECF No. 63]. The Court will set this matter for a telephonic trial scheduling conference by separate order.

SO ORDERED on March 27, 2020.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT